Court of Appeals The Court will be honored by a motion from one of its colleagues today.  JUDGE PROBST Thank you, Chief. I move the admission of Shawn Blackburn, who is a member of the Bar and Good Steering and Highest Court of New York. I have knowledge of his credentials and am satisfied that he will possess the necessary qualifications. As we've all said before, I think, and we all know, the best thing about this is that    this job is the court's. Maybe second only to colleagues, but we can discuss that later. And Shawn certainly is no exception. It's been a pleasure and an honor to have him with me for the past year, most importantly to get to know him and his family, but secondly, to have the benefit of his enormous expertise. And I know he's going out to practice, and I'm sure he'll make us all proud when he does. So I move his admission. JUDGE PROBST Do you agree? Then it comes down to my vote, right? MS. BLACKBURN No, it's two to one, no matter what. JUDGE PROBST Could you administer the executive order? MR. BLACKBURN You solemnly swear that you will consider yourself an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do.      BLACKBURN Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I hope to see a lot of you in the future. Now, our first case this morning is Marvin Furniture v. United States. I look forward to hearing from Mr. Peterson. MR. PETERSON Good morning, Your Honor. John Peterson representing Marvin Furniture. The question in this case is whether a party seeking initiative overdue who makes a factors error in his application has made a fatal, irremediable error that deprives him of his statutory right to get a new ship or review.  FURNITURE You broke the rules.  PETERSON Right. MR. FURNITURE There's no dispute that you're required to do this. MR. PETERSON Well, we submitted some information in the – one piece of information in the application, a piece of factual information, that turned out to be incorrect for reasons we didn't understand. The Commerce Department, having run a check with the Customs Service, said, gee, you've reported this sale – this entry as your first sale. Now, Customs has some information indicating that there were two other customs entries made earlier, but still within the one-year period, where Marvin Furniture appeared as the foreign exporter. We knew nothing of them. We hadn't made the entries. We tracked them down. We found them. They were with – they were not entries – MR. PETERSON So what rule would you substitute? You get one do-over. You get two do-overs. You get four do-overs. MR. FURNITURE Well, I think the truth – the truth, prudence of this court, Your Honor, is that when it comes to correcting factual errors on a commerce record, the goal is always to ensure accurate factual information and to permit the amendment or correction of the record. And that goal – and there's 20 years of case law on that – only comes into question      And I think that's what we're trying to do. And I think that's what we're trying to do. issue final determination. We weren't there at this case. This was at the very initiation stage. MR. PETERSON Now, you responded, but your response wasn't accurate. Is that correct? MR. FURNITURE Well, the response – we were doing an investigation, Your Honor. I mean, what we were told was on, I think, August 19th, Commerce said, Gee, we have a customs printout saying there were two earlier entries. We knew nothing about it.      So we did a through look at the record of these entries. And we found out that, on the first day that we looked at the record, the first day of the shipment was sent to a trade show. And we told that to the Commerce Department on the 24th of April. And they had put out a questionnaire saying, Can you get those documents and put them on the record? So Commerce asked us to supplement. They asked us to correct. We told them, Yeah, we'll get them for you. We asked for an extension until August 26th. And on August 26th, we got those two entries, and we put them on the record. Now, those two entries, even if you count them as the first shipments by Martin Furniture,       FURNITURE Well, the response wasn't accurate. MR. PETERSON Now, you responded, but your response wasn't accurate. MR. PETERSON So we did that.  MR. NEUMANN But those entries were not for a trade show, it turned out. MR. PETERSON It turned out to be consumption entries. But, again, they were not made by Martin Furniture. They were not made by anybody exercising authority at Martin Furniture. They weren't sales. They don't have any data from which anyone could have calculated a dumping margin.       MR. NEUMANN I'm sorry. MR. PETERSON I'm sorry. MR. NEUMANN I'm sorry. MR. PETERSON I'm sorry. MR. PETERSON I mean, again, if the one-year period is reasonable, this court would uphold it. But I'm not challenging its reasonability, because we were always within the one year. And it's important to say this. Again, the government seems to say, you guys stepped on a third rail. Modern Furniture committed an unpardonable sin under the dumping law. And by stepping on that third rail, by committing that one uncorrectable error, you sacrificed the right that Congress had given you in the statute to get a new shipper repair. And we don't think there's a third rail here. If you look at the regulatory history, why the regulation says, submit a copy of an entry or a date of first shipment with your new shipper investigation, the regulatory history, after notice and comments, simply says, well, that requirement is just an aid of letting commerce be satisfied that their one-year period is met. So the entry we identified in the initial submission was within a year. The entries we had identified before they initiated were all within a year. Now, there seems to be some dispute, maybe a factual dispute in the briefs, or maybe I just couldn't understand it correctly with regard to what the impact or import of what you did was. Your position seems to be no harm, no foul. I mean, there's no impact. You were still within the year, and so there was no problem, no motivation for you to hide it, ya-da-da. The government comes back at 17 of red and says, well, no, whether the September 2010 entries are in or out does affect the whole scope of the review and so forth. And you seem to take issue with that in gray. So what's the deal on that? Okay, well, the first deal is that what the government said in its brief was not what the Commerce Department said. The Commerce Department simply said, we're ineligible. You lost your eligibility. Okay, that's the first thing they said. The second argument, and again, this is not something that commerce said. This comes from the government. They said, oh, well, you know, having these two entries here would have affected the period of review that commerce sought. Well, if you look at commerce's regulation, it tells you that commerce has total discretion to set the period of review in a new shipper review. There was never an issue about that. You know, they may say, well, it could have affected the period of review, but it didn't. And from the Commerce Department… But they had to fix it then. They had to change it. So something, in fact, changed with regard to what they had to do as a result of your failure to include those entries in the first instance. Was it correct? That's kind of the unusual thing you're on. Is that correct? No, no, not really. Actually, nothing really changed because we had put the corrections on it before they initiated it. If the Commerce Department thought that, you know, having these entries as our first entries instead of some other ones, if they had thought that would have affected the period of review, they could have declared a different period of review when they initiated this NSR, or they could have modified it immediately after. What's really funny here is the Commerce Department is claiming, guys, you stepped on third rail. You stepped on third rail back in July when you had this mistake in your new shipper review application. Mr. Peterson, I'm still… I sense that the government's concerned with the way that you handled this whole matter. You didn't disclose the earlier shipment. Then you disclosed that the earlier shipment was metal racks. It was not. You then disclosed that it was attributable to triple play, and it wasn't. It was. Well, there's more to that story, as we all understand, and it's somewhat confidential. But with all of that surrounding fact involved, isn't the government justified maybe in giving you… They gave you a chance, which they found to be not handled well. Why couldn't they use this remedy? Well, having given us the chance, they, in fact, voted to initiate. They did, in fact, initiate it. Okay, even though the investigation was public. I mean, it's not as if they were just saying, oh, there was a document in your files you didn't give. There was a document we didn't give, but we didn't have it in our files. We had to go out and we had to find out what it was. We were giving the government status reports as we investigated. When we said, well, it was trade show merchandise, we thought it was under bond, which most trade show merchandise is. Then we found out it was consumption entries, and on the 24th we said, we're going to get a copy of those entries and put them on the record for you, which we did. And, again, we did that before the initiation. Were duties paid on those entries? Excuse me? Were duties ever paid on those entries? They were not, but we were not the importer of record, nor was anyone related to us the importer of record. Do you know as of today whether duties were ever paid? I don't. I mean, if the customs service made a difference as to whether they're entered for consumption or they stayed in a bonded-type environment? Well, the goods were entered for consumption. We know that. We know that the entries were liquidated without the payment of duty or the deposit of duty. But the other thing, and, again, this is up to customs. We didn't make the entries, so you don't know about it. If, in fact, there were no sales for export to the United States, there would be no basis for assessing a duty. There's no sale. There's no way to determine an export price. So I don't know what happened to those entries. I mean, we didn't authorize, and we had no idea. But the request for this review is to kick off the investigation. It's not to supply all of the information that's going to be used in the course of the review. Oh, no. Again, this requirement is only in aid of determining whether our application was within one year of our first shipment. Correct. Initially, we were saying, oh, it's within two months of our first shipment. It turns out, oh, it's more like within 10 months but still within one year. So, Mr. Peterson, when we look at the applicable regulation, it says a request for a new ship review must contain the following documentation that establishes the date on which subject merchandise first entered or was drawn from a warehouse for consumption. Now, where's the harmless error consideration that you want us to consider? Where is it in the regulation? Well, where you'll find it is you'll find that it's 61 Federal Register 7318, which is where the regulation was adopted. And the Commerce Department said the only reason we request that document to be provided is to make sure that you're within the one year. So it's not a sui generis requirement. And then the question becomes, as in any dumping proceeding, if you make a factual submission and it turns out to be incorrect and you have to amend it, should you be allowed to amend it? There's two decades of jurisprudence in this court. There's the NTN case, the SR Steel case, Sterling Systems v. Golden, all of which say that the purpose of the dumping law is to come up with the most accurate and correct determination. And to that end, Commerce has to allow the correction of factual matters on the record. In NTN, the court said we don't even balance that need to accept factual corrections with anything else unless we're up at the last final stage. Where would be the restraints on any request for new shipping? Can you simply say anything you want? Oh, no, not at all. I mean, all of this is subject ultimately to verification, Your Honor. All of it is subject to verification. And if that verification shows or establishes that the information submitted was not correct, then... Oh, that would be a problem, but they never did a verification. But in this case, they didn't need to. I mean, it was clear that the information submitted was incorrect. But it was corrected, and it was corrected prior to initiation. So the question to this court is whether the record of this proceeding, looked at as a whole, supports our eligibility, which is never the question. There's no question that we're eligible as new shippers, and there's no question that we filed this application within the one year. And that's the only reason. But this is a harmless error when the government has to jump through a lot of hoops to reset the time period. They never tried to reset the time period. But they would have had to go through some hoop jumping. Isn't that, by its nature, not a harmless error? No, Your Honor. See, and that's the funny thing I was saying about a third rail before. Normally when you step on a third rail, it kills you right away. If this was a fatal error, like the government says, they should have known it right up front. They not only initiated this review, but they spent five months conducting it. They collected all the information. They collected every bit of information that we had, all our sales information. It wasn't until January of 2012, when we're getting ready to schedule a verification, that the government comes back to us and says, Oh no, you're dead. You were dead from the beginning. You committed the fatal error that can't be fixed. That, Your Honor, I suggest, number one, there is no third rail here. And this is simply a reason. And always, there's always a desire to have good factual information in a dumping proceeding. But this court has always recognized, and the statute recognizes, that parties should be given a chance to correct that in timely fashion. We've saved some of your rebuttal time, Mr. Peterson. Thank you. Ms. Burke. May it please the Court. This case is not about a factual error. The regulation requires parties requesting a newship or review to demonstrate, with documentation, evidence of their first entry, as well as evidence of their first sale. Well, the question I have about that is, regulations typically are, at least in part, for the purpose of notifying the public of what's required for them. And that, I agree with you, the regulations do. But also, kind of the consequences of failure to comply or non-strict compliance. And here we've got subsection F of the regulation that gives the sort of circumstances for rescission. And what went down here is not included in that list. We all agree on that? Yes. So, and the government, you know, isn't that problematic? And the government also. The other concern I have is rules are rules and they're supposed to be followed consistently. And it seems like the government's position in this case is not black letter, you've got to comply with this, and if you don't, you're out. It's the government, in its brief at least, tries to show that under the facts here, we gave them a chance, we gave them two chances, and they still didn't comply. So what is the government's position? What are the rules? You get two chances and then you're out? Or is it a black letter rule? Well, I'll answer the last question first. It's true that in the final determination, Commerce's final reason for rescinding the review was that Marvin had not ultimately complied with the regulation. But it's also true that Commerce, in the first instance, relied on Marvin's certified statement, but acknowledged that there was a little bit more work to be done, and acknowledged that they were up against the deadline, so they were going to initiate, in good faith, based upon those statements. Now, what Commerce did then was it gave Marvin extra chances. Did it have to do that? No. If Marvin had, at any time, produced the actual documentation, not just statements of counsel, but actual documentation to Commerce, would Commerce have continued with the review and actually gotten to the merits? Maybe, probably. I can't speculate, but there's a good chance. So the government's position is not that they were required to impose this under 351, but rather that they have discretion under the totality of circumstances to decide whether or not rescission is warranted? Well, I think at the end of the day, Commerce has to have the documents that it needs. Is Commerce's position that if it doesn't have those documents on August 31st, there's a per se rule that it absolutely won't consider the request? Obviously not, because it did continue with this proceeding. So it was giving Marvin the benefit of the doubt, really for a couple of months, after Commerce was aware that it still had questions. Did it have to do that? No. Why did it then? I mean, one of the problems I have is that you did give Marvin chances, but you went ahead and initiated it. Well, we went ahead and initiated it for a couple of reasons. First of all, we were up against the deadline, so Marvin asked for its new shipper review on the very last day, which of course it's permitted to do. But then it gives Commerce... You could have said no at that time. Well, we had to do at least an investigation to determine... I mean, you could have said, we have a regulation we need to apply, and you're not giving us information, we're not going to initiate, but you decided to initiate. That's true. We could have said no. However, we had a certified statement from Marvin's counsel about the nature of both the 2011 and the 2010 shipments. So I'm not sure it would have been entirely reasonable. I mean, I think we could have not initiated, but we would have had to say, we don't believe your certified statement. Without any other documentation, we don't believe it. And Commerce wasn't prepared to do that. Commerce wanted to give Marvin a chance to submit the documentation that was required. What are you asking us to affirm here? What is our construction of the regulation to be? That under the regulation, Commerce has complete discretion as to whether or not they will invoke a rescission under any circumstances? That they have complete discretion, obviously subject to reasonable, non-arbitrary, and so forth. Is that what the government is asking us to affirm here? Well, I think the government is asking the court to affirm the principle that when a party has failed to produce the predicate threshold documentation that's necessary for a proceeding, maybe this is overstating it a little bit, but Commerce really doesn't have the authority to continue with that proceeding if it doesn't have the predicate information. And so we're asking the court to uphold the notion that it's perfectly reasonable for Commerce to rescind a proceeding when it finally determines that it does not have the predicate documentation. Well, are we supposed to say, though, that Commerce has to give someone at least a second chance to do it, or that's completely up to Commerce, whether it wants to try to investigate further or not? Well, I don't think the court needs to get there, because in this case, of course, Commerce gave Marvin probably five chances. Did it have to? No. So I don't know whether the court even needs to get there. Well, I'm worried about the next case. I mean, if the court does what you want, and then somebody else comes in, and in the next case Commerce takes a firm thing and doesn't even give anyone a chance to do it, and we're asked to affirm that, there's a discrepancy between how Commerce acted here and how it acted later, and that's problematic for me at least. Right. Well, of course it would have to depend on the facts of that case. I can imagine a particular factual scenario where Commerce really could be absolutely positive at the get-go, we're never going to get the documentation that we need, because of whatever the initial representation is. I understand the court's concern that if you're faced with these particular facts and Commerce doesn't behave exactly similarly, then that's troublesome. I will say that this kind of procedure is not unusual. Commerce, and we cited them in our brief, the defendant intervener cited them in their brief, there's many decisions where Commerce initiates a review based upon certified statements, and then later on finds out that those certified statements are not borne out by the documentation that's required by the regulation, and rescinds in those kinds of circumstances. So, this is typical, it's not necessarily, I mean, I think maybe the facts are unusual, but Commerce's reaction is pretty typical. The court has no further questions. We respectfully request that Commerce's decision to rescind license review be sustained. Thank you.  Thank you, sir. Good morning, please, the court. My name is Michael Taylor for the American Furniture Manufacturers Committee for Legal Trade and Bombast at the defendant appellees. One thing that's very important, I think, for the court to understand, and we've been asking a lot of questions about this, is the context in which this happened, the information that was given, and also the context of the new ship review and how it fits within the actual administrative review process. And here, the new ship review and the regulations are clear. You can request a review within one year of the first shipment. And the regulations also are clear in subsection G that the period of review is normally a year if it follows a calendar year process, or if it's requested in the semi-annual period, normally six months. But that normally is very important, and there was a statement made about the regulations and the fact that Commerce would have defined the POR as a six-month period of review in this instance. In fact, what the regulations, when they were promulgated, actually say is that it is the department's intent to apply paragraph G, the normally provision about the POR, in a flexible manner so that the department may expand the standard period of review to cover the first exportation of a new ship. So, when the regulations were announced, Commerce said, we're going to define PORs so that we make sure we capture all of the shipments that happened during the time that they qualifies as a new shipper in that one-year period, so that we can actually calculate a dumping margin using actual sales. So, a company doesn't come in and cherry-pick sales data in order to get a margin that's not reflected as actual sales. This is an extraordinary proceeding where it's a short timeline, and it also provides bonding purposes, as Commerce stated in its final determination. This has real implications at the border. Someone's allowed to import entries in a way that's different than they'd normally be able to do so. So, what happened here? The question the government just had not initiated. I mean, it appears that under the regulation, they have that authority. You heard me read it, and it says that the information supplied must, but in practice, because new shipper reviews is common in the dumping arena, and in practice, there's a lot of information that goes to initiate a new shipper's review. Some of it may not be correct. In this case, Commerce initiated it, and later, the information, it went through several convolutions, but it was corrected in the end, right? Actually, I understand the question, but I think, again, the context is important. Commerce initiated on the representation that first, during the new shipper review application, it was certified to by parties, as Commerce said, that had participated in the actual shipment. So, whether there was knowledge, there really should have been knowledge of the actual shipment during 2010. That statement said there were no shipments prior to the 2011 shipment. Then, when they initiated, and this is in the administrator record, JA-77, and the notice of initiation checklist, the whole discussion is proprietary, but they conditionally initiated. They said, where we sit right now, we've been told first that there was no shipment, then we were told this is not subject. That's where we are, we have to initiate. We are relying on your certifications. We've asked questions, but we're going to then go out and make a determination. Very clearly, at the beginning of that- The government is saying, you should give us the authority to rescind the initiation at any time during the course of a review. If we find out that the information was not valid from the very beginning, why should we do that if it appears that the regulation is clear in its face, that it should not initiate if it doesn't have the information? Judge, I think that's an excellent question. I think what Commerce did when it initiated, in the very beginning of the checklist, it says if the information supplied in the certifications is found to be insufficient or incorrect during the course of this proceeding, the department may rescind. They told the parties in this review, we're relying on your certifications as we sit right now. We have to give you the benefit of the doubt because you've certified this. We've asked questions, and we will look at that to determine whether or not this was not your first shipment. They came back and said, we've determined after we've asked several supplemental questionnaires that your certifications and information that we relied on to initiate this was inaccurate. That's the way it played out. I don't think there's anything inappropriate with a government regulatory agency relying on and protecting its proceedings. Because, again, in this instance, this is a six-month review period they requested. They have to be able to capture all of the sales, all of the shipments that took place. There's a factual issue as to whether this was an actual sale. In fact, we discussed in our briefs and showed that, in fact, the record demonstrates this was a sale and it hasn't been overcome. Commerce gave an opportunity to provide an affidavit that was never provided, and it changed from demonstrating that. I see I'm out of time now. Please finish. Thank you very much. But in this instance, what happened was they said, this is our shipment. This is the time period. We want this six-month review period. It turns out they had shipments that they should have identified in the one-year time period. Commerce, because it has a very short investigation period, has to initiate very quickly. August 30th was the date that was issued on the questionnaire that went out to the parties, asking for the sales information and the factor information so they could calculate a dumping margin. They had a certain amount of time to provide that information. It asked for sales during that six-month period. Commerce needs that month period to set the questionnaire, to get the information, so they can gather the information and get statutory guidelines to calculate the dumping margin properly. Thank you, Mr. Taylor. Mr. Peterson. Thank you, Your Honor. Both Ms. Burke and Mr. Taylor mentioned certifications. Under the Commerce Department's regulation, every factual submission is required to be certified. As we also know, those certified submissions are often amended. Section 1677M of the statute says an amendment should be permitted. So obviously there are occasions, because it's a human enterprise, where people will submit information and say, oh, it's the wrong information, it's inaccurate information, we're going to resubmit it with a new certificate, which was done here, number one. What about the government's argument that the reason they need to have correct information at the outset is in order to establish the appropriate period of review? Well, it's a non-issue because two reasons. First of all, if you look at the rulemaking— How can it be a non-issue? The government's got to issue questionnaires. It's got to marshal its forces. It's got to decide. The period of review is not a non-issue. It's an important issue, isn't it? The rulemaking says the period of review normally will be linked to the anniversary month of the order, and the use of normally indicates that the Secretary has discretion to use another period in appropriate circumstances. If this court wanted to remand this case to Commerce and say, expand your period of review, we'd be fine with that. Okay, that's number one. But number two, if you look at the Commerce regulations on rescission, they offer two grounds for rescinding, neither of which are present here. But one of the grounds are, well, if you don't have a sale, if you have an import that's not pursuant to a sale, it might be your first shipment, and it might trigger your period to ask for a new shipper review. But if they don't find a sale in the United States, they will terminate the review, or they will postpone the review until you have a sale. So those two new entries, those two earlier entries, were not sale entries. For all I know, Commerce may have said, well, they don't require us to extend the period. But again, that wasn't the reason they gave for rescinding. They said you weren't eligible. They always had the power to change the period of review. Thank you, Mr. Peterson. Our next case is...